UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONNIE CARTER, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
|    *vs.* ) | 1:12-cv-577-JMS-MJD |
| ) | |
| MICHAEL ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
|    *Defendant.* ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Connie Carter applied for Supplemental Security Income benefits on October 15, 2007. Her application was denied both initially and after reconsideration by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"). Administrative Law Judge Angela Miranda (the "ALJ") held a hearing in July 2010 and later issued a decision that Ms. Carter was not entitled to disability benefits. Ms. Carter has filed this action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits.

### I.
#### RELEVANT BACKGROUND

Ms. Carter was forty-seven years old at the time of her application in October 2007. [Dkt. 9-5 at 2.] Ms. Carter claims that she is disabled because of arthritis of the lumbar spine, left knee, and both hands, as well as chronic obstructive pulmonary disease ("COPD") and mental health limitations. [Dkt. 9-2 at 44.]

Ms. Carter has a high-school education. [*Id.* at 46.] In 2006 she worked as a laborer at New Market Plastics, but she quit that job because the fumes from making the products interfered with her breathing. [*Id.* at 46-47.] Before that, Ms. Carter worked at Random House

in Crawfordsville for nine months. [*Id.* at 48-49.] That job required a lot of walking and bending, and Ms. Carter lifted up to 40 pounds of books at a time. [*Id.* at 49.]

At the hearing before the ALJ, Ms. Carter testified that she has not worked since 2006 because her "back won't let [her] bend anymore." [*Id.* at 49.] She said she cannot lift more than a gallon of milk and cannot breathe well or use her hands to manipulate or grasp things. [*Id.* at 49-50.] Sitting or standing too long and walking aggravate Ms. Carter's lower back and knees, resulting in a constant pain "like a dull toothache." [*Id.* at 50-51.] She testified that after sitting or standing for too long, she must lie down for 30 to 40 minutes. [*Id.* at 58-59.] Ms. Carter also testified that she deals with mental health issues, including anxiety, attention span issues, and problems with other people. [*Id.* at 53-55.] She is able to do a few household chores, including dishes, dusting, and preparing meals, if she takes breaks. [*Id.* at 62-63.]

Ms. Carter has received medical treatment, and the relevant portions of that treatment will be described in detail as needed to address the issues raised on appeal. Additional facts will be provided as necessary.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it

only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

### III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Ms. Carter was not disabled. [Dkt. 9-2 at 31.]

At step one of the analysis, the ALJ found that Ms. Carter had not engaged in substantial gainful activity[1] since the alleged onset date of her disability. [Dkt. 9-2 at 21.]

At step two, the ALJ identified six severe impairments[2] from which Ms. Carter suffers: COPD; tobacco abuse; degenerative disc disease in the thoracic and lumbar spines; arthritis in the left knee; bilateral arthritis in the hands; and mental impairments variously assessed as depressive disorder, mood disorder, anxiety, alcohol dependence, and cannabis dependence. [*Id.*] Specifically, the ALJ found that these impairments, individually or in combination, "have more than a minimal effect on [Ms. Carter's] ability to perform work related functions." [*Id.*] The ALJ did not find Ms. Carter's claimed impairments of bipolar disorder or post-traumatic stress disorder to be medically determined in the record. [*Id.*] The ALJ noted that Ms. Carter's alcohol and cannabis use was not material to the determination of this case because, despite a history of dependence, there was only some evidence of limited continuing and episodic use and Ms. Carter was in remission for portions of the critical period with no significant difference in functional ability or symptoms. [*Id.* at 22.]

At step three, the ALJ considered various listings, but found that Ms. Carter's impairments did not meet or medically equal those listings. [*Id.* at 22-24.] Ms. Carter does not challenge the ALJ's determination that she did not meet or medically equal a listing.

At step four, the ALJ found that Ms. Carter had the RFC to perform light work with postural, manipulative, environmental, and mental limitations. [Dkt. 9-2 at 24.] Specifically, the

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a)-(b).

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

ALJ found that Ms. Carter has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds, the unlimited capacity to stand and walk 6 hours in an 8 hour work day, and the capacity to sit 6 hours in an 8 hour work day. [*Id.*] The ALJ further found that Ms. Carter has the capacity to frequently balance, and occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps, as well as the ability to frequently reach, handle, and finger, with no limitations in the ability to feel. [*Id.*] The ALJ also found that Ms. Carter has the capacity for occasional exposure to dust, fumes, and other pulmonary irritants, as well as the mental capacity to understand, remember, and carry out simple, routine tasks. [*Id.*] Finally, the ALJ noted her finding that Ms. Carter had the capacity to appropriately interact with supervisors, co-workers, and the general public, identify workplace hazards, and adapt to routine changes in the workplace. [*Id.*]

In connection with step four, the ALJ made an adverse credibility finding regarding Ms. Carter's statements concerning the intensity, persistence, and limiting effects of her symptoms "to the extent they are inconsistent with the above residual functional capacity." [Dkt. 9-2 at 28.] In relevant part, the ALJ gave limited weight to treating physician Dr. John Linson's functional assessment of Ms. Carter as "inconsistent with his own clinical examinations of the claimant, as his clinical examinations [were] generally unremarkable." [*Id.* at 29.] The ALJ also gave limited weight to Dr. Masooma Sheikh's mental functional assessment "as it is inconsistent with his own clinical examinations." [*Id.*] The ALJ gave "some weight" to the Agency's examining source, Dr. Shuyan Wang. [*Id.*]

At step five, the ALJ determined that Ms. Carter is unable to perform any past relevant work, but that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ms. Carter could perform. [*Id.* at 30.]

The ALJ cited the vocational expert's testimony that the positions of usher or crossing guard required light work and only occasional reaching, handling, and fingering. [*Id.*] Based on these findings, the ALJ concluded that Ms. Carter was not disabled. [*Id.* at 31.]

## IV.
### DISCUSSION

Ms. Carter challenges the ALJ's decision for three categories of reasons: 1) that the ALJ allegedly failed to give adequate deference to Ms. Carter's treating physicians; 2) that the ALJ failed to properly evaluate Ms. Carter's credibility; and 3) that the ALJ relied upon flawed testimony from the vocational expert. The Commissioner defends the ALJ's decision on all but the third point, which the Court finds to be an appropriate place to begin its analysis.

### A.  Vocational Expert Testimony

In her decision, the ALJ found that Ms. Carter had moderate difficulties with regard to concentration, persistence, or pace. [Dkt. 9-2 at 23.] Ms. Carter notes that despite this finding, the hypotheticals posed to the vocational expert did not account for these difficulties and, instead, only limited her to "simple, routine tasks." [Dkt. 11 at 26.] Ms. Carter cites case law from the Seventh Circuit holding that limiting individuals to "simple, routine tasks" does not account for limitations of concentration, persistence, and pace. [*Id.* (collecting cases).]

The Commissioner does not respond to this argument, as Ms. Carter points out on reply, [dkt. 13 at 4]. It is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response to this argument. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (holding that in response to a motion, "[a] party waives any argument that it does not raise before the district court").

It is well-established that when an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The Seventh Circuit has repeatedly held that limiting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an impairment in concentration." *Id.* at 684-85; *see also O'Connor-Spinner v. Astrue*, 627 F.3d at 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions" did not account for "moderate limitation on concentration, persistence and pace")[3]; *see also* 1985 WL 56857, *6 (SSR 1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

Based on the controlling precedent cited above, the ALJ erred by not accounting for Ms. Carter's recognized limitations in concentration, persistence, and pace in her proposed hypotheticals to the vocational expert. Accordingly, the vocational expert's testimony that jobs exist in significant numbers in the national economy that Ms. Carter could perform was based on a flawed premise and the ALJ erred by relying on it to conclude that Ms. Carter is not disabled.

---

[3] While *O'Conner-Spinner* sets forth some exceptions to this rule, as noted above, the Commissioner did not respond to Ms. Carter's argument, much less argue that an exception to the general rule applies.

On remand, the ALJ must make sure to include all limitations supported by medical evidence in the record when she posits hypotheticals to the vocational expert.[4]

### B. Weight Given to Physicians' Opinions

Although the Court has already determined it appropriate to remand this matter, for judicial economy it will address other issues Ms. Carter raises that are likely to be present on remand.

Ms. Carter argues that the ALJ erred by failing to give adequate weight to the opinions of three doctors—Dr. Linson, Dr. Sheikh, and Dr. Shuyan Wang.[5]  [Dkt. 11 at 15-21.]  The Commissioner defends the ALJ's decision to give less weight to these providers' opinions. [Dkt. 12 at 15-20.]

Generally, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).[6]  If the ALJ decides not to give the physician's opinion controlling weight and articulates a good reason for such a decision, the ALJ still must decide what weight to give the opinion.  *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2).  In determining the

---

[4] Ms. Carter also argues that the ALJ erred by not including various other limitations in the hypotheticals posed to the vocational expert that are allegedly supported by her treating physicians' opinions. [Dkt. 11 at 25-26.]  This argument is largely a restatement of her challenge regarding the lack of weight given to her treating providers' opinions, [*id.* at 15-21], which will be addressed in detail below.

[5] Ms. Carter also argues that the ALJ erred by not giving adequate weight to the opinion of Nurse Practitioner Warner, but she concedes that Ms. Warner is not an acceptable medical source as that term is used in the applicable regulations.  [Dkt. 11 at 18-19.]  The Court will not address Ms. Carter's arguments regarding Nurse Practitioner Warner further, given that the ALJ gave the opinion some weight and Ms. Carter concedes it is not entitled to controlling weight.

[6] Effective March 26, 2012, 20 C.F.R. 404.1527 was amended with paragraphs (d) through (f) redesignated as paragraphs (c) through (e).  *See* 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012).

weight to give the opinion, the ALJ should consider the following factors: 1) the treatment relationship, including the length, nature, and extent of the relationship and the frequency of examinations; 2) the supportability and consistency of the opinion with the record as a whole; 3) whether the physician is a specialist; and 4) any other factors the claimant or others bring to the attention of the ALJ.  20 C.F.R. § 404.1527(c)(2)-(6).

An ALJ who concludes that the treating physician's opinion is inconsistent with or unsupported by other evidence must provide an explanation, "and [her] failure to do so constitutes error."  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  The Commissioner cannot rely on evidence or argument on which the ALJ did not rely to support the ALJ's decision.  *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("The government implies that if the administrative law judge's opinion consisted of two words—'benefits denied'—a persuasive brief could substitute for the missing opinion.  That is incorrect.  It would displace the responsibility that Congress has delegated to the Social Security Administration—the responsibility not merely to gesture thumbs up or thumbs down but to articulate reasoned grounds of decision based on legislative policy and administrative regulation—into the Justice Department, which represents the agency in the courts.").

### 1)  Dr. Sheikh (Ms. Carter's Treating Psychiatrist)

After reviewing the ALJ's opinion and the parties' arguments, the Court finds that the ALJ erred by giving limited weight to Dr. Sheikh's June 2010 mental functional assessment for being "inconsistent with his own clinical examinations" with no further explanation.  [Dkt. 9-2 at 29.]  The ALJ only noted two things about Dr. Sheikh's findings: 1) that he diagnosed Ms. Carter with a mood disorder in April 2009 based on mood swings, depression, racing thoughts, and past suicidal ideations, and 2) that he reported Ms. Carter was doing well five months later on

medication. [*Id.* at 28.] As an initial matter, these are not inconsistencies, despite the Commissioner's attempt to label them as such. [*Id.* at 19-20.] More importantly, the ALJ did not suggest that these findings are inconsistences. Instead, with no subsequent explanation, the ALJ cursorily concluded that Dr. Sheikh's opinion was entitled to limited weight because it was allegedly inconsistent. It was error not to explain or support this conclusion, *Clifford*, 227 F.3d at 870, and the Commissioner cannot rectify it with arguments not supported by the ALJ's decision or by relying on evidence not afforded weight by the ALJ, *Spiva*, 628 F.3d at 353; [dkt. 12 at 21 (Ms. Carter's argument that the Commissioner impermissibly relied on evidence from consultative psychologist Wooden not relied upon by the ALJ)].

### 2)  Dr. Linson (Ms. Carter's Treating Family Practitioner)

Ms. Carter primarily relied on Dr. Linson to support her complaints of spinal, knee, and hand pain. The ALJ also concluded that Dr. Linson's opinions were to be "given limited weight as they are inconsistent with his own clinical examinations of the claimant, as his clinical examinations [were] generally unremarkable." [Dkt. 9-2 at 29.] Before that conclusion, the ALJ detailed Ms. Carter's visits to Dr. Linson and used the term "unremarkable" five times with regard to those examinations before ultimately concluding that "the evidence shows that the claimant had generally unremarkable clinical findings regarding her back pain, with normal gait, range of motion, and motor strength noted throughout." [*Id.* at 26.]

Ms. Carter disputes the ALJ's decision to give Dr. Linson's June 2009 opinion limited weight because it was inconsistent with his allegedly unremarkable findings during treatment. [Dkt. 11 at 16-18.] She disputes that his findings were unremarkable and argues that the limitations in the June 2009 questionnaire Dr. Linson filled out for Ms. Carter's attorney were supported by the evidence. [*Id.*]

The Commissioner defends the ALJ's decision to give limited weight to Dr. Linson's opinions in the June 2009 assessment, pointing out that the proposed limitations ignore Dr. Linson's previous treatment notes showing Ms. Carter's normal or near normal findings. [Dkt. 12 at 16-17.]

The Court agrees with the Commissioner that the ALJ's opinion sufficiently supports her decision to give limited weight to Dr. Linson's opinion. The Court will not belabor the point, given that it has found remand to be appropriate on other grounds, but the ALJ sufficiently detailed Dr. Linson's findings, explained why they were not particularly remarkable, and adequately supported her conclusion not to give much weight to Dr. Linson's June 2009 assessment given the previously unremarkable evidence. Moreover, Ms. Carter ignores the fact that despite this conclusion, the ALJ accommodated Ms. Carter's subjective complaints of back and knee pain by limiting her to light work with additional postural limitations, including only occasional stooping, kneeling, crouching, crawling, and climbing stairs. [Dkt. 9-2 at 26.] Therefore, it is clear that the ALJ did give some weight to Dr. Linson's opinions, consistent with her decision.

### 3) Dr. Wang (Agency's Examining Source)

Ms. Carter argues that the ALJ erred by not accounting for all of the findings of Dr. Wang, a consultative doctor on whom the ALJ did rely. [Dkt. 11 at 19-20.] Specifically, Ms. Carter points out that the ALJ purported to rely upon Dr. Wang's opinion but did not acknowledge Dr. Wang's opinion that Ms. Carter may need to sit down for 20 minutes out of every hour and was limited to lifting, carrying, pushing, and pulling 5 pounds frequently and 10 pounds occasionally. [Dkt. 11 at 19-20 (citing dkt. 9-8 at 15).] Ms. Carter points out that those findings are inconsistent with Dr. Wang's (and the ALJ's) conclusions that Ms. Carter could

perform light work because light work typically requires standing at least 6 hours per day and lifting 10 pounds frequently and 20 pounds occasionally. Therefore, Ms. Carter argues that the ALJ erred by relying on some of Dr. Wang's findings without distinguishing others.

The Commissioner does not directly respond to Ms. Carter's argument regarding Dr. Wang other than in a footnote arguing that the ALJ reasonably did not adopt certain portions of Dr. Wang's opinion that appeared to be based upon Ms. Carter's subjective allegations rather than Dr. Wang's clinical findings or other objective evidence. [Dkt. 12 at 20 n.3.]

The Court is mindful that the standard of review on a challenge to an ALJ's findings is highly deferential, but that deference is not limitless. "[A]n ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted) (emphasis added). An ALJ need not mention every piece of evidence, but she must build a logical bridge from the evidence to her conclusion. *Id.* "It is not enough for the ALJ to address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Even if the Commissioner's assessment of the ALJ's distinction between certain portions of Dr. Wang's conclusions is correct, the ALJ did not build a logical bridge sufficient to reach that conclusion. Specifically, although the ALJ cited Dr. Wang's ultimate conclusion that Ms. Carter could perform light work for 8 hours a day, [dkt. 9-2 at 25], she did not acknowledge Dr. Wang's finding that Ms. Carter may need to sit for 20 minutes each hour because of the back pain, hip pain, and knee pain, [dkt. 9-8 at 15]. As Ms. Carter points out, sitting for 20 minutes each hour means that Ms. Carter would be standing for less than 6 hours of the day, which is the typical requirement for the full range of light work. [Dkt. 11 at 20 (citing SSR 83-10, 1983 WL

31251, *6).]  While it is possible that the ALJ could have accepted portions of Dr. Wang's opinion while rejecting others, her opinion does not acknowledge, let alone explain, rejecting portions of the opinion favorable to a disability finding.  This was error.

### C. Adverse Credibility Determination

Ms. Carter argues that the ALJ failed to properly evaluate her credibility.  [Dkt. 11 at 22-24.]  She contends that the ALJ did not assess all of the factors listed in SSR 96-7p and directs the Court to boilerplate language from the ALJ's opinion that is similar to language criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).

The Commissioner argues that substantial evidence supports the ALJ's credibility determination.  [Dkt. 12 at 22-23.]  The Commissioner highlights Ms. Carter's testimony about her daily activities and cites other medical evidence it believes supports the ALJ's credibility determination.  [*Id.*]

The ALJ's credibility determination is entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court," *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  Consistent with Seventh Circuit authority, the Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'"  *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("[Because] the ALJ is in the best position to observe

witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not 'patently wrong.'").

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96-7p.  Under Social Security Ruling 96-7p, the ALJ must assess the following minimum factors:

> (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and (6) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.  "[D]etermining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Given the Court's conclusion that this matter must be reversed and remanded on various other grounds, it will not partake in an extensive analysis regarding the ALJ's adverse credibility determination.  The Court notes that the ALJ engaged in a lengthy discussion about the medical evidence and ultimately, despite the adverse credibility finding, did consider Ms. Carter's subjective complaints of pain in various instances.  [*See* dkt. 9-2 at 26.]  The Court is concerned, however, by the ALJ's use of language very similar to the "meaningless boilerplate" criticized by the Seventh Circuit in *Bjornson*.  671 F.3d at 645 ("Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.  More troubling, it appears that the Commissioner

has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand. . . .").  On remand, the ALJ should specifically assess the factors at issue in SSR 96-7p and, if an adverse credibility finding is warranted, cite the specific evidence considered in determining that Ms. Carter's complaints are not credible.

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Carter benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).  Final judgment will issue accordingly.

12/13/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Eddy Pierre Pierre
LAW OFFICES OF HARRY J. BINDER AND CHARLES E. BINDER, P.C.
fedcourt@binderandbinder.com